**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

RABINDRANATH BENJAMIN,

                                             Plaintiff,

                                                                              9: 07-CV-0506
                                                                                (LEK/DRH)

              v.

PANG LAY KOOI, Medical Doctor; CAROL WALLACE,
Registered Nurse, Cayuga County Jail; and JACKIE
CHADWICK, Registered Nurse, Cayuga County Jail,

                                             Defendants.

─────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

RABINDRANATH BENJAMIN
Plaintiff Pro Se
14021052
Moshannon Valley Correctional Center
555 Cornell Drive
Philipsburg, Pennsylvania 16866

PETRONE & PETRONE, P.C.            DAVID H. WALSH, IV, ESQ.
Attorney for Defendants
1624 Genesee Street
Utica, New York  13502

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Rabindranath Benjamin ("Benjamin"), formerly an inmate in the

custody of the Cayuga County Jail ("Cayuga") and currently in custody in the State of

Pennsylvania, brings this action pursuant to 42 U.S.C. § 1983 alleging that three Cayuga

─────────────────────

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and N.D.N.Y.L.R. 72.3(c).

employees violated his constitutional rights under the Eighth and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 42. Benjamin opposes the motion and has filed a cross-motion for summary judgment.  Dkt. No. 44. Defendants have submitted a reply to the motion for summary judgment and have responded in opposition to Benjamin's cross-motion.  Dkt. Nos. 45, 46. For the reasons which follow, it is recommended that defendants' motion be granted and that Benjamin's cross-motion be denied.

### I. Background.

The facts are related herein in the light most favorable to Benjamin as the non-moving party. See subsection II.A, infra.

At all relevant times, Benjamin was incarcerated at Cayuga. Compl. at 4-7. On October 16, 2006, Benjamin slipped on water outside the shower area, fell, and lost consciousness. Id. at 4. As a result of the fall, Benjamin "suffered [from] severe neck and back pain, excruciating pain in [his] legs, loss of short-term memory, headaches and migraines, and constant pain in [his] hips." Id.  Benjamin was transported by ambulance to Auburn Memorial Hospital where he was examined, x-rays were taken, and he had a Computed Tomography ("CT") scan. Dkt. No. 42-5, Deposition  Transcript ("Tr.") at 24-25; see also Dkt. No. 42-1, Ex. B ("Auburn Memorial Hospital Medical Records"). The CT scan taken of his cervical spine showed narrowing and degeneration at C6-7 intervertebral disc space with moderately severe cervical spondylosis at that level. Dkt. No. 42-3 at 18-19.

After five hours, Benjamin was returned to Cayuga where he was placed in a cell

2

for medical observation for two to three days. Tr. at 26-29; Rule 7.1 Statement (Dkt. No. 42-1), ¶¶ 7, 8.  While in the observation cell, Benjamin was seen by a nurse and given 650 milligrams of Tylenol every four hours around the clock. Dkt. No. 42-1, Ex. C ("Cayuga Med. Records"); Rule 7.1 Statement, ¶ 10; Tr. at 29.[2] On October 16, 2006, Benjamin was also checked every thirty minutes as per instructions from the Auburn Memorial Hospital Emergency Room. See Cayuga Med. Records. Upon his return to Cayuga, Benjamin complained to nurses that he "was still in a lot of pain." Tr. at 29. He had neck, head, and back pain. Tr. at 30. Benjamin did not eat two to three meals because his food tray was placed on the floor and he was in too much pain "to go down to the floor, to slide down to grab the tray to come back up." Id.

Benjamin had appointments with Dr. Kooi, a defendant here, on October 20, November 2, and December 1, 2006, and on February 8, 2007 and with Nurse Wallace, a defendant, on January 6, 2006. Cayuga Med. Records. Each time Benjamin saw Dr. Kooi, Nurse Chadwick, a defendant, was present.  Tr. at 39.  On October 20, 2006, Benjamin told Dr. Kooi that he had pain in his neck, back and hips and found it difficult to walk. Tr. at 34. Dr. Kooi examined Benjamin and continued him on Motrin. Rule 7.1 Statement, ¶ 12; Cayuga Med. Records. Benjamin asked Dr. Kooi to prescribe stronger medication. Tr. at 35. On November 2, 2006, Benjamin told Dr. Kooi that he was still in pain from his injuries. Tr. at 38. Benjamin complained of headaches; Dr. Kooi prescribed Advil and Tylenol. Cayuga Med. Records. Benjamin asked Dr. Kooi to have him moved to a handicapped cell; Dr. Kooi told him to take it up with the Sergeant. Tr. at 39.

---

[2] Benjamin states that he saw either Chadwick or Wallace but does not recall which. Id.

On December 1, 2006, at Chadwick's urging, Dr. Kooi saw Benjamin for headaches and prescribed Flexeril.  Rule 7.1 Statement, ¶ 14; Cayuga Med. Records; Tr. at 39-40. On January 6, 2007, Wallace gave Benjamin aspirin to be taken at the onset of a headache and noted that Benjamin would be re-examined if the aspirin gave no relief. Rule 7.1 Statement, ¶ 15; Cayuga Med. Records.  After Benjamin complained of headaches to Chadwick, she gave him a bottle of nasal spray, said that a dry nose could cause headaches, and the nasal spray might give him relief. Tr. at 58. Benjamin told Wallace that his headaches were from his fall, not a dry nose. Id. However, Wallace could not prescribe medication for him. Tr. at 50.

On February 8, 2007, Benjamin saw Dr. Kooi and complained of right chest pain. Cayuga Med. Records. Benjamin said that he was not nauseous and was eating. Id.; Rule 7.1 Statement. Dr. Kooi prescribed Motrin. Cayuga Med. Records; Rule 7.1 Statement, ¶ 16.  Benjamin also told Dr. Kooi that he still experienced headaches "on and off" but was having more pain in his back and hips and was having difficulty walking. Tr. at 41. Dr. Kooi told Benjamin that he would improve but that it would take six months to a year. Id. Benjamin told Dr. Kooi that he was still in pain. Tr. at 42. Benjamin asked Dr. Kooi for an MRI but was told that it was not necessary because an MRI was only for broken bones. Tr. at 42-43.

Benjamin was never refused a request to see Dr. Kooi. Tr. at 55-56; Rule 7.1 Statement, ¶ 18. During his time at Cayuga, Benjamin saw one of the nurses on a daily basis. Tr. at 62; Rule 7.1 Statement, ¶ 19.  Benjamin was always given his prescribed medication. Id. Benjamin continued to complain of frequent and severe headaches and lower back pain in September through December, 2007. Dkt. No. 44-2, Ex. A. On

4

September 24 and December 20, 2007, Benjamin was seen by medical staff at Moshannon Valley Correctional Center for complaints of low back pain exacerbated by cold weather. Id. He was prescribed Motrin and rest. Id.

During the two to three days that Benjamin was in a medical observation cell at Cayuga, he was provided with a mattress so worn that it was half the normal size. Tr. at 27. Benjamin had blankets, a sheet, and a toilet but had to wait a day before he received the sheet and blanket. Tr. at 28.  He did not have a pillow. Id. Benjamin was then placed in the reception area dormitory for three to four days. Tr. at 36. Benjamin had a steel bed, mattress, blankets, and sheets. Tr. at 39.  Benjamin was then transferred to a cell in the housing unit which had a slab of concrete on the wall for a bed, a mattress, a blanket, sheets, a toilet, a sink and a mirror. Tr. at 37. Benjamin had requested a handicapped cell and was told that "they were going to work on it." Id. Benjamin wanted to be placed in a handicapped cell "for the bars by the toilet" because he was having trouble walking. Tr. at 57. Benjamin requested an extra mattress and pillow, but the request was denied. Tr. at 52-53. This action followed.

## II. Discussion.

Benjamin alleges that defendants violated his constitutional rights by denying him adequate medical care for his serious medical needs and by subjecting him to cruel and unusual conditions of confinement. Compl. Benjamin alleges that he suffers from "pain to the back, hips, neck and legs along with slight headaches. Benjamin has experienced excessive pain to the same areas of the body, headaches and migraines, uneven walking, lack of sleep, short-term memory loss, and loss of concentration.  Compl. at 6. Benjamin

also asserts that defendants denied him appropriate pain medication and diagnostic testing after his fall. Id. at 5-6. Finally, Benjamin alleges that his request for an extra mattress and pillow were improperly denied.[3] Id. at 6. Defendants seek summary judgment on the grounds that (1) Benjamin has failed to establish the personal involvement of defendants Chadwick and Wallace; (2) Benjamin's Eighth Amendment deliberate medical indifference claim is without merit; and (3) Benjamin's claim that his conditions of confinement amounted to cruel and unusual punishment is without merit. Dkt. No. 42.

Benjamin has cross-moved for summary judgment on the grounds that (1) defendants failed to provide adequate medical treatment to him after his fall; (2) the negligent act which caused his fall was foreseeable; and (3) defendants failed to provide him with safe and secure housing. Dkt. No. 44. In response to the cross-motion for summary judgment and in reply to the motion for summary judgment, defendants assert that defendants are entitled to summary judgment because (1) Benjamin failed to respond to defendants' statement of material facts; (2) Benjamin has failed to raise a question of fact as to whether he suffered a serious medical condition; (3) Benjamin has failed to raise a question of fact as to whether defendants acted with deliberate indifference; and (4) any negligence claim asserted against the county is legally insufficient. Dkt. No. 45.

---

[3] Additionally, Benjamin alleges that he attempted to file multiple grievances pertaining to his lack of medical treatment but he was told that since the medical staff had already treated him, the situation was resolved and he was unable to file a grievance. Id. at 4-5.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to

any material fact if supported by affidavits or other suitable evidence and the moving party

is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of

the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of

the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine

issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder

of fact could find in favor of the non-moving party for a court to grant a motion for

summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir.

1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se

litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed.

Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed

Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count,

we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is

obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Defendants' Motion for Summary Judgment

### 1. Benjamin's Failure To Comply with Local Rule 7.1(a)(3)

As a threshold matter, defendants assert that Benjamin's failure to respond to their statement of material facts constitutes an admission to the statements contained therein. Dkt. No. 45 at 1-2.  Local Rule 7.1(a)(3) of the Northern District of New York provides that a motion for summary judgment must include a Statement of Material Facts. "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement of Material Facts ("Rule 7.1 Statement") is submitted by the moving party, Rule 7.1 requires that the party opposing summary judgment file a response to the moving party's statement. Id. The non-movant's response shall mirror the movant's statement by admitting or denying each of the movant's assertions in matching numbered paragraphs. Id.  Each denial shall set forth a specific citation to the record where the factual issue arises. Id. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Id.

While Benjamin has opposed defendants' summary judgment motion, he has not

responded to defendants' Rule 7.1 Statement[4] as required by Local Rule 7.1(a)(3). By its

terms, Local Rule 7.1(a)(3) provides that "<u>[t]he Court shall deem admitted any facts set</u>

<u>forth in the Statement of Material Facts that the opposing party does not specifically</u>

<u>controvert</u>." <u>See</u> N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original). Courts in this district have

not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts

admitted upon an opposing party's failure to properly respond. <u>See</u> <u>N.Y. Teamsters</u>

<u>Conference Pension & Retirement Fund v. Express Services, Inc.</u>, 426 F.3d 640, 648-49

(2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying

Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted"

because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered

mostly conclusory denials of [movant's] factual assertions and failed to include any record

citations."); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam) (accepting

as true material facts contained in unopposed local rule statement of material facts);

<u>Meaney v. CHS Acquisition Corp.</u>, 103 F. Supp. 2d 104, 108 (N.D.N.Y. 2000) (deeming

movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no*

citations-specific or otherwise-to the record"); <u>McKnight v. Dormitory Auth. of State of N.Y.</u>,

189 F.R.D. 225, 227 (N.D.N.Y. 1999) ("deem[ing] the portions of Defendants' 7.1(a)(3)

statement that are not specifically controverted by Plaintiff to be admitted"); <u>Osier v.</u>

---

[4] With his cross-motion for summary judgment, Benjamin included what he refers to as his "Statement of Facts in Support of Motion for Summary Judgment for Plaintiff." Dkt. No. 44-1. Benjamin's purported Rule 7.1 Statement is not in compliance with Local Rule 7.1 because it does not set forth a specific citation to the record where each fact is established. Therefore the Rule 7.1 Statement submitted with the cross-motion is not properly supported and will not be considered by the Court to be a proper Rule 7.1 Statement. <u>See</u> N.D.N.Y.L.R. 7.1(a)(3).

Broome County, 47 F. Supp. 2d 311, 317 (N.D.N.Y. 1999) (deeming admitted all facts in

defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported

facts without any indication where those facts can be located in the record"). Pro se

litigants are not excused from compliance with the rule.[5]

Because Benjamin failed to include in his opposition papers a Rule 7.1 Statement

specifically controverting defendants' factual assertions in matching numbered paragraphs

with specific citations to the record, defendants' factual assertions in their Rule 7.1

Statement are deemed admitted by Benjamin.[6]  Despite this, "[i]f the evidence submitted

in support of the summary judgment motion does not meet the movant's burden of

production, then summary judgment must be denied even if no opposing evidentiary

matter is presented." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244

(2d Cir. 2004) (citations omitted). "Moreover, in determining whether the moving party has

met this burden of showing the absence of a genuine issue for trial, the district court may

not rely solely on the statement of undisputed facts contained in the moving party's

_____

[5] See McNeil v. U.S., 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citation omitted); LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995) ("Although pro se litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil litigation .") (internal quotation marks and citations omitted).

[6] In this case, accepting the facts contained in defendants' Rule 7.1 Statement as true is in large part harmless to Benjamin, since many of the facts referenced in the statement are taken from Benjamin's testimony at his pretrial deposition.

[statement of material facts.] It must be satisfied that the citation to evidence in the record supports the assertion." Id.

## 2. Personal Involvement

Defendants argue that neither Chadwick nor Wallace were personally involved in any wrongdoing. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) and McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). The doctrine of respondeat superior is inapplicable to section 1983 claims. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Benjamin alleges that Chadwick was present every time that Dr. Kooi examined him. Compl. at 6. At his deposition, Benjamin testified that he told Chadwick about his medical problems every day when she came to his unit, and she heard all of the complaints that he made to Dr. Kooi, yet he received no examination from anyone. Tr. at 58-59. Benjamin alleges that Wallace "denied any request [that he] put in concerning receiving medical attention" and that when he complained of migraine headaches, Wallace gave him a tube of nasal spray.  Compl. at 6.

Applying the standards for personal involvement set forth above, a reasonable juror

could conclude that Chadwick and Wallace were personally involved in the alleged provision of inadequate medical care to Benjamin. It is recommended, therefore, that defendants' motion for summary judgment in favor of Chadwick and Wallace on the basis of lack of personal involvement be denied.

### 3.  Eighth and Fourteenth Amendment Claims

Benjamin asserts various claims under the Eighth Amendment, which explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. While not clear from the Complaint, it appears that Benjamin was housed at Cayuga as a pretrial detainee on federal charges.[7] The Eighth Amendment protections apply to those who have been convicted of a crime, sentenced, and are thus suffering the "punishment" contemplated by the Cruel and Unusual Punishment Clause. Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir.  2003) (citing cases). Claims concerning the conditions of confinement brought by a pretrial detainee, such as Benjamin, must be analyzed under the Fourteenth Amendment Due Process Clause. Id. The standards when evaluating deliberate indifference to a person in custody are identical whether brought under the Eighth or Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective

---

[7]  On September 27, 2006, Benjamin made an initial appearance in federal court on a criminal complaint.  See United States v. Benjamin, No. 5:06-cr-0392 (N.D.N.Y.). Benjamin was remanded to custody.  Id.  Benjamin subsequently pleaded guilty on February 8, 2007 and was sentenced on May 21, 2007 to a term of incarceration.  Id. Since the allegations in Benjamin's complaint preceded his conviction, it appears that during the time relevant to this action, he was housed at Cayuga as a pretrial detainee.

of whether they are brought under the Eighth or Fourteenth Amendment."); see also

Shane v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen

the State takes a person into its custody and holds him there against his will, the

Constitution imposes upon it a corresponding duty to assume some responsibility for his

safety and general well-being ... [including] food, clothing, shelter, medical care, and

reasonable safety ...."). Accordingly, cases analyzed under the Eighth Amendment provide

guidance in analyzing cases, as here, considered under the Fourteenth Amendment.

Therefore, Benjamin's medical indifference and conditions of confinement claims will be

considered under Eighth Amendment standards.

### a.  Medical Indifference Claims

Benjamin alleges that he was denied adequate medical care in deliberate

indifference to his serious medical needs while he was incarcerated at Cayuga. The

Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive

adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832-34 (1994); see also

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); U.S. Const. amend. VIII.

Not every injury or denial of medical care is a constitutional wrong. Rather, "a prison

official violates the Eighth Amendment only when two requirements are met." Farmer, 511

U.S. at 834.

First, the prisoner must show that the condition to which he was exposed was

sufficiently serious. Farmer, 511 U.S. at 834. Second, the prisoner must show that the

prison official demonstrated deliberate indifference by having knowledge of the risk and

failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a

13

substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. Thus, negligence alone is not actionable.  Estelle v. Gamble, 429 U.S. 97,106 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

### i. Serious Medical Condition

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)); see also Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (quoting Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185. Since medical conditions vary in severity, "a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." Harrison, 219 F.3d at

14

136-37.

Defendants argue that "Plaintiff has not produced any evidence beyond his own subjective complaints to suggest that any of his injuries of October 16, 2006 were so life-threatening or so urgent that they required immediate care beyond that received at the Emergency Room on October 16, 2006." Dkt. No. 42-9 at 12, Defs. Mem. of Law. On the other hand, Benjamin claims that while at Cayuga, he suffered from neck, hip, and back pain, migraine headaches, and difficulty walking and sleeping.[8] Compl. at 6. Construing Benjamin's Complaint with great liberality, Benjamin claims that his medical conditions interfered with his everyday life.  Benjamin's medical records from the Federal Bureau of Prisons demonstrate that he was still complaining of pain and suffering in 2007, one year after his fall. Dkt. No. 44-2 at 6; see also id., Ex. A.

Depending upon the facts presented, severe back pain, especially if lasting an extended period of time, and migraine headaches may qualify as "serious medical needs" under the Eighth Amendment. See, e.g., Mendoza v. McGinnis, No. 05-CV-1124, 2008 WL 4239760 at *10 & n.16 (N.D.N.Y. Sept. 11, 2008) ("The question of whether chronic back pain can rise to a level of constitutional significance is dependent upon the circumstances of the particular case presented. In this instance, given plaintiff's diagnosed condition of degenerative disc disease, and resolving all ambiguities in plaintiff's favor, I conclude that a reasonable factfinder could find that the condition constitutes a serious

---

[8]  While Benjamin has not submitted an affidavit with his opposition to the summary judgment motion, his verified Complaint may be considered an affidavit. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment").

medical need." Moreover, "defendants fail to address plaintiff's migraine headaches, which can also constitute a serious medical need."); <u>Guarneri v. Hazzard</u>, No. 06-CV-0985, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) (holding that severe back pain, especially if long-lasting, can amount to a serious medical need); <u>Peterson v. Miller</u>, No. 04-CV-797, 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007) (noting that migraine headaches have "been found by other courts to represent a sufficiently serious potential medical need as to survive a motion for summary judgment."); <u>Faraday v. Lantz</u>, No. 03-CV-1520, 2005 WL 3465846, at *5 (D.Conn. Dec. 12, 2005) (holding that persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitute a serious medical need.); <u>Moriarty v. Neubould</u>, No. 02-CV-1662, 2004 WL 288807, at *2 n. 2 (D.Conn. Feb. 10, 2004) (holding that plaintiff's migraine headaches could constitute a sufficiently serious condition to warrant Eighth Amendment protection since they can be "extremely painful and debilitating.").

In this instance, Benjamin complained of back pain and migraine headaches for more than a year and his CT scan showed evidence of degenerative disc disease. <u>See</u> Cayuga Med. Records; <u>see</u> <u>also</u> Tr.; Dkt. No. 42-3 at 18-19. Benjamin stated that the pain interfered with daily activities, such as walking and sleeping. Compl. Defendants have offered nothing, such as an affidavit from Benjamin's treating physician, to refute Benjamin's claims of chronic pain or to lead this Court to conclude that Benjamin's evidence of a serious medical condition is too insubstantial to raise a genuine issue of fact. As stated by the Second Circuit Court of Appeals, an inmate should not be required "to demonstrate that he or she experiences pain that is at a limit human ability to bear, nor do we require that his or her condition will degenerate into a life-threatening one." <u>Brock</u>,

315 F.3d at 163. Resolving all ambiguities in Benjamin's favor, Benjamin has presented

sufficient evidence to allow a reasonable factfinder to conclude that Benjamin's conditions,

namely back pain and migraine headaches continuing for an extended period, could rise

to the level of serious medical needs.

### ii.  Deliberate Indifference

Deliberate indifference requires the prisoner "to prove that the prison official knew

of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702.

Deliberate indifference requires more than negligence, but less than conduct undertaken

for the very purpose of causing harm. " Hathaway, 37 F.3d at 66.  A prison official acts

with deliberate indifference where he "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. (citation omitted). Thus, prison officials must intentionally deny treatment or

accommodations for medical conditions or intentionally interfere with treatment once

prescribed. Estelle, 429 U.S. at 104. "Mere disagreement over proper treatment does not

create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at

703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for

X-rays), forms of treatment, or the need for specialists or the timing of their intervention

are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr.

Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

> Indeed, prison officials and medical officers have wide discretion in treating
> prisoners, and Section 1983 is not designed to permit federal courts to
> interfere in the ordinary medical practices of state prisons. Church v.

17

> Hegstrom, 416 F.2d 449, 450-451 (2d Cir. 1969). Federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given medical attention that judges would wish to have for themselves.") So strong is this view that determinations of medical providers concerning the care and safety of patients are given a "presumption of correctness." Perez v. The County of Westchester, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (citing Kulak v. City of New York, 88 F.3d 63, 77 (2d Cir. 1996)).

Sonds, 151 F. Supp. 2d at 311-12.

"Further, a delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm." Thomas v. Nassau County Correctional Center, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (internal quotation marks omitted) (citing Chance, 143 F. 3d at 703). "The Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." Thomas, 288 F. Supp. 2d at 339 (internal quotation marks omitted) (citing Espinal v. Coughlin, No. 98 Civ. 2579, 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002)).  Even if a prisoner is able to establish delay, he must also show that his condition became worse or deteriorated as a result of the delay.  Thomas, 288 F. Supp.2d at 339.

Benjamin has not established that any of the defendants were deliberately indifferent to his serious medical needs. The record demonstrates that immediately after his fall, staff at Cayuga determined that his injuries warranted immediate medical attention and he was transported by ambulance to Auburn Memorial Hospital where he was examined and given x-rays and a CT scan. Tr. at 24-25; see also Dkt. No. 42-1 (Auburn

Memorial Hosp. Med. Records). Upon his return to Cayuga, he was placed in a medical observation cell for several days. Tr. at 26-29; Rule 7.1 Statement, ¶¶ 7, 8. Throughout his stay at Cayuga, he saw a nurse on a daily basis and was never denied his prescribed medication. Tr. at 61-62; Rule 7.1 Statement, ¶ 19. While Benjamin alleges that Wallace only gave him nasal spray when he complained of headaches, he also acknowledged that Wallace had no authority to prescribe medication. Tr. at 50, 58. The record also shows that each time he asked to see Dr. Kooi, the request was granted. Tr. at 55-56. Each time that he saw Dr. Kooi, he was prescribed medication for his pain (see Cayuga Med. Records). While Benjamin claimed that Dr. Kooi refused to order an MRI for Benjamin (Tr. at 42-43), Dr. Kooi's decision not to order an MRI does not amount to deliberate indifference. See Joyner v. Greiner, 195 F. Supp. 2d 500, 505 (S.D.N.Y. 2002) ("[w]hether an MRI should have been done is a classic example of a matter for medical judgment as to the appropriate course of treatment and is not actionable under the Eighth Amendment.") (internal quotation marks omitted).

Moreover, the fact that Benjamin wanted different medication than what was prescribed, or that he needed a pillow or extra mattress to ease his pain, also do not state a claim for deliberate medical indifference. A prisoner has no right to treatment of his choice and disputes over the proper course of treatment are not actionable under the Eighth Amendment. See McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). So long as prison officials act "reasonably," no violation of the Eighth Amendment occurs. See Salahuddin v. Goord, 467 F.3d 263, 280-81 (2d Cir. 2006).

In other words, Benjamin's medical records and his own testimony confirm that defendants were actively involved in Benjamin's care and were not deliberately indifferent

to his needs. Moreover, Benjamin has not alleged or proven that any defendant denied him access to medical care as a form of punishment or to make him suffer. Finally, the Court cannot find, based on the record, that defendants delayed Benjamin's medical treatment. In any event, even if Benjamin could establish that proper medical care was unreasonably delayed, Benjamin has not established that any delay in treatment resulted in a deterioration or worsening of any medical condition. See Thomas, 288 F. Supp. 2d at 339 (" Even if a prisoner is able to establish delay, in order to establish deliberate indifference, he must also show that his condition became worse or deteriorated as a result of the delay.") In this case, the record shows that after Benjamin was transferred to federal custody, his complaints and treatment remained essentially the same.  Dkt. No. 44-2 at 11-12. In September and December, 2007, Benjamin was examined by medical staff at Moshannon Valley Correctional Center after complaining of lower back pain. Id. Benjamin was prescribed Motrin and rest. Id.

Accordingly, no reasonable fact-finder could conclude that defendants were deliberately indifferent to Benjamin's serious medical needs. Therefore defendants' motion for summary judgment should be granted as to Benjamin's medical indifference claims.

### b.  Conditions of Confinement Claims

As discussed above, Benjamin's claims that he was subjected to inadequate conditions of confinement are appropriately analyzed under Eighth Amendment standards. See subsection II(B)(3) supra. The Supreme Court held that "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." Farmer, 511 U.S. at 832 (quoting  Rhodes v. Chapman, 452 U.S.337, 349 (1981)). The Eighth

Amendment requires that prison officials provide "humane conditions of confinement"

including "adequate food, clothing, shelter and medical care." <u>Farmer</u>, 511 at 832.

To succeed on a conditions of confinement claim, both an objective and subjective

test must be met. First, the deprivation must, from an objective standpoint, be "sufficiently

serious." <u>Farmer</u>, 511 U.S. at 834. Therefore, a plaintiff must demonstrate that the

conditions of confinement fell below the "minimal civilized measure of life's necessities."

<u>Rhodes</u>, 452 U.S. at 347; <u>see</u> <u>also</u> <u>Phelps v. Kapnolas</u>, 308 F. 3d 180, 185 (2d Cir. 2002)

("Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner

must prove that the conditions of his confinement violated contemporary standards of

decency."). Specifically, a prisoner must prove that he has been deprived of a "single,

identifiable human need such as food, warmth, or exercise." <u>Wilson v. Seiter</u>, 501 U.S.

294, 304 (1991). The subjective test requires a plaintiff to show that the defendant prison

officials imposed the conditions with deliberate indifference. <u>Jolly v. Coughlin</u>, 76 F.3d 468,

480 (2d Cir. 1996)

In this case, Benjamin alleges that when he returned to Cayuga after his trip to the

hospital, he was confined in a medical observation cell for two to three days with a

mattress so worn that, it was only one-half to three-quarters of a mattress. Tr. at 27.

Benjamin testified that he waited a day before he received a sheet and blanket and he did

not have a pillow. Tr. at 28. Benjamin also testified that at some point during his

incarceration at Cayuga, he requested an extra mattress and a pillow, but the request was

denied. Tr. at 52-53. Finally, Benjamin states that he did not eat two to three meals while

in the medical observation cell because he could not reach them without increasing his

pain.[9]

Even construing the facts in the light most favorable to Benjamin, this combination of conditions for the period of time alleged does not constitute a deprivation that is sufficiently serious to deny Benjamin the minimal measure of necessities for civilized living nor does it violate contemporary standards of decency. Bell v. Artuz, No. 98-CV-4710, 1999 WL 253607, at *3-4 (S.D.N.Y. Apr.29, 1999) (holding that no Eighth Amendment claim was stated where prisoner alleged poor ventilation, asbestos on catwalk behind cells, no bacterial soap, insufficient lighting, no pillows, and lack of space in cell); Liles v. Camden County Dept. of Corrections, 225 F. Supp. 2d 450, 458-59 (D.N.J. 2002) (holding that allegation that inmates receive two sheets and one blanket, but no pillow, does not rise to level of sufficiently serious deprivation to constitute Eighth Amendment violation); Gutridge v. Chesney, No. COV.A. 97-3441, 1998 WL 248913, at *1 (E.D. Pa. May 8, 1998) (holding that allegation that inmate's blanket was removed for approximately a month and a half failed to state Eighth Amendment claim because inmate was not deprived of warmth).

Moreover, Benjamin never alleges that his lack of a blanket or sheet for a day deprived him of a human need, such as warmth. There is nothing in the record to demonstrate that Benjamin was denied heat or clothing during the one day that he was without a blanket or sheet. In fact, when questioned at the deposition, Benjamin stated

---

[9] In contrast, in his cross-motion for summary judgment Benjamin asserts that he did not eat the first meal delivered to him but that "by the time the second meal came around the plaintiff being a human being was at this point hungry, so the plaintiff has to slide himself down to the floor and use his feet in an attempt to slide his food tray over to him which was a long and tedious not to mention painful task." Dkt. No. 44-2 at 3.

that he did not remember the temperature in the cell on the day he was without a sheet or blanket. Tr. at 28. He remembered only that it was moist, dark, and gloomy. Id. Additionally, with respect to Benjamin's claim that he had to sleep on an undersized mattress for two to three days, such a limited duration does not suffice to satisfy the subjective prong of the analysis. See Suprenant v. Rivas, 424 F.3d 5, 20 (1st Cir. 2005) ("[D]uration may affect the [constitutional] calculus [for conditions of confinement].") (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (holding that unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks or months.").

The same holds true with respect to the lack of a blanket and sheet for one day. As to Benjamin's claim that he was essentially denied anywhere from one to three meals because he could not reach his tray without suffering pain, this too fails to state a claim of constitutional proportion. "While no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights ... . , under certain circumstances a **substantial** deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (emphasis added); see also Waring v. Meachum, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (finding no Eighth Amendment claim where inmates missed one or two meals and there was no indication that future meals were missed); cf. Moss v. Ward, 450 F. Supp. 591, 596-97 (W.D.N.Y.1978) (deprivation of food for four consecutive days held unconstitutionally disproportionate punishment for disciplinary violation).

Since Benjamin has not established that he was subject to conditions that would satisfy the objective prong of such a claim, his conditions of confinement claims fail. See,

23

Brown v. McElroy, 160 F. Supp. 2d 699, 706, n.4 (S.D.N.Y. 2001) (finding that the subjective prong need not be considered when the conditions of confinement alleged are not sufficiently serious). Moreover, even if Benjamin had established a sufficiently serious deprivation for purposes of the Eighth Amendment, he has not established that any defendant acted with a sufficiently culpable state of mind with regard to any deprivation. In fact, there is nothing in the record to demonstrate that any of the defendants personally denied Benjamin meals or bedding, or that they would have had authority to provide those items to Benjamin.

Based on this record, no reasonable fact-finder could conclude that lack of a sheet and blanket for one day, lack of a pillow and extra mattress, or being denied two or three meals would deprive Benjamin of the minimal measures of necessities required for civilized living. Accordingly, defendants' motion should be granted as to the conditions of confinement claims.

### C. Benjamin's Cross-Motion for Summary Judgment

Benjamin has cross-moved for summary judgment. Dkt. No. 44. Benjamin also tries to revisit this Court's prior decision denying him the right to amend his Complaint to add a negligence claim against Cayuga County. Id.; see also Dkt. No. 38 (February 2, 2009 Order). The February 2, 2009 Order denied Benjamin's motion to amend his Complaint to add a claim against Cayuga County for negligence because, among other things, Benjamin had failed to alleged that he had served the requisite notice of claim on Cayuga County as required by New York General Municipal Law § 50-e. See February 2, 2009 Order at 4-5.

With respect to his negligence claim Benjamin asserts that water build-up outside of a shower created a foreseeable risk of harm to inmates passing through that area and, therefore, the County should compensate him for injuries sustained in a fall resulting from that hazard. Dkt. No. 44. Benjamin asserts that his "injuries resulted from the [negligent] behavior of the prison's authorities because they knew of the existing hazardous conditions due to prior incidents at that exact location and neglected to do anything about it." Dkt. No. 44-2 at 1. Benjamin further claims that his original Complaint demonstrated that he intended to sue Cayuga for injuries suffered as a result of staff negligence and points to the Third Cause of Action in his Complaint, wherein he stated "Plaintiff moves to sue facility for further injuries sustained because of facility's staff negligence." Id.; see also Compl. at 5. Benjamin's attempt to have the Court reconsider its February 2, 2009 Order is clearly untimely.[10] Nevertheless, in light of Benjamin's *pro se* status, the Court will again address his attempt to assert a claim for negligence against Cayuga County.

As they did in opposition to Benjamin's motion to amend, defendants argue that Benjamin's state law claims for negligence are futile because he failed to file a notice of claim as is required under New York's General Municipal Law § 50-e. Dkt. No. 45 at 3-4. Defendants also take issue with Benjamin's claim that he intended to also sue Cayuga County, pointing out that Cayuga County was not named as a defendant in Benjamin's complaint. Dkt. No. 45 at 3-4; see also Compl.

"As 'a condition precedent' to commencing a tort action against New York

---

[10] Local Rule 7.1(g) provides that "a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree." N.D.N.Y.L.R. 7.1(g).

municipalities, or any of their officers, agents, or employees, New York General Municipal Law section 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." Olsen v. County of Nassau, No. CV-05-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008). Accordingly, Benjamin's state law claim for negligence against Cayuga County is futile and he will not be permitted to amend his Complaint to include it. Even if the Court were to liberally construe Benjamin's Complaint as including a claim against Cayuga County for negligence, the claim remains futile.[11]

Moreover, even if Benjamin could establish that he had filed a timely notice of claim, the Court should not exercise pendent jurisdiction over any state law claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even if not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

As to the medical indifference and conditions of confinement claims, it is recommended herein that judgment be granted to defendants on those claims. See subsection II(B)(3) supra.  For the reasons discussed therein, it is recommended that Benjamin's cross-motion for summary judgment be denied in its entirety.


### III. Conclusion.

WHEREFORE, based on the above, it is hereby

**RECOMMENDED** that:

---

[11]  Further, to the extent that Benjamin could have sought permission to file a late notice of claim, he must do so in state court. See Olsen, 2008 WL 4838705, at *3 (citing N.Y. Gen. Mun. Law § 50-e(5)(7)).

26

1. Defendants' motion for summary judgment (Dkt. No. 42) be **GRANTED** and that judgment be entered in favor of all defendants on all claims; and

2. Benjamin's cross-motion for summary judgment (Dkt. No. 44) be **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993)(citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

DATED:  February 25, 2010
       Albany, New York

_David R. Homer_

David R. Homer
U.S. Magistrate Judge